# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RICHARD TEAKELL and
MARTHA TEAKELL, et al.,

    Plaintiffs,

v.                                                                                  Civil No: 04-50 RB/RHS

CLOVIS MUNICIPAL SCHOOLS, et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed March 15, 2004 **(Doc. 4)**. This is a complaint for attorney's fees and costs in connection with an administrative action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

### Background

Mark Solis, on whose behalf his parents filed this lawsuit, was a student in the Clovis Municipal Schools who qualified for receipt of special education services as a student with a disability under the IDEA.[1] In January, 2003, Mark's parents filed a request for a due process hearing to address several concerns regarding what they considered to be a lack of educational services for their son. A hearing was held from April 29, 2003 through May 1, 2003. Both parties appealed the decision by the Due Process Hearing Officer, and a final decision on appeal

---

[1] Mark was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and as Specific Learning Disabled.

was issued on October 27, 2003. After the hearing, but before the parties filed notices of appeal from the hearing decision, Mark graduated from high school.

Mark's counsel provided representation at both the due process hearing and the administrative appeal, and Plaintiffs seek an award of fees and costs for counsel's legal services. Defendants move to dismiss the request for fees on two grounds: first, that Plaintiffs' application for fees is untimely, and secondly, that Plaintiffs did not prevail on their claims.

When ruling on a motion to dismiss, I must accept the factual allegations of the complaint as true. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969); Dewell v. Lawson, 489 F.2d 877, 879 (10th Cir. 1974). The complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. American Home Assur. Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Gas-a-Car, Inc. v. American Petrofina, Inc., 484 F.2d 1102, 1107 (10th Cir. 1973). Material allegations must be taken as true, and all reasonable inferences must be indulged in favor of the complainant. Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

**Discussion**

The IDEA is a comprehensive statute designed to ensure that all children with disabilities have access to an appropriate public education. Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1042 (10th Cir. 1993). The IDEA's primary mechanism to achieve this goal is the requirement that local education officials create an individualized education program ("IEP") tailored to each child's specific needs. Id. The IDEA also includes a procedural scheme that requires states to establish procedures to ensure that parents are involved in decisions

affecting their children and that parents are also allowed to seek review of decisions they feel are inappropriate. Id. at 1043. Parents must receive written notice whenever a school district proposes or refuses to change the identification, evaluation, or educational placement of a child or the provision of an appropriate public education to the child. 20 U.S.C. § 1415(b)(1)(C). Additionally, the discipline of a child, including short-term suspensions, is a matter that relates to the public education of a handicapped child and therefore falls within the scope of the IDEA. Parents have the right to seek review of any decisions affecting their child's education through a due process hearing conducted by the state educational agency. See, Honig v. Doe, 484 U.S. 305, 311-12 (1988); T.S. v. Indep. Sch. Distr. No. 54, 265 F.3d 1090, 1091 (2001).

I.  **Is Plaintiffs' Application for Fees Untimely?**

The IDEA contains two provisions relevant to this discussion: 20 U.S.C. § 1415(i)(2) and § 1415(i)(3)(B) (formerly § 1415(e)(2) and (e)(4), see, Nieves-Marquez et al v. Commonwealth of Puerto Rico et al., 353F.3d 108, 119, n.7 (1st Cir. 2003)).[2] Section 1415(i)(2) provides for the appeal of a substantive administrative decision, whereas under § 1415(i)(3)(A) and (B), federal district courts are vested with discretion to award reasonable attorney's fees to the parents of a

---

[2] Section 1415(i)(2) confers a right to sue on "aggrieved" parties. Although a prevailing party is not an "aggrieved" party under the language of 20 U.S.C. § 1415(i)(2), the use of the word "proceeding" in § 1415(i)(3)(B) allows a prevailing party to sue for fee awards. This is much like similar language in the Civil Rights Act of 1964, which authorizes fee awards for legal work done for the prevailing side in state administrative proceedings. See King et al. v. Floyd County Bd. of Educ, 228 F.3d 622, 625 (6th Cir. 2000) (citing New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980)). Also, a plaintiff who prevailed at the administrative level may nevertheless qualify as an "aggrieved" party in certain circumstances, e.g., where the school system fails to comply with the hearing officer's valid and final order. See, e.g., Nieves-Marquez et al. v. Commonwealth of Puerto Rico et al., 353 F.3d 108, 115-16 (1st Cir. 2003). Defendants here do not dispute that a prevailing plaintiff can request fees under the IDEA. Rather, Defendants contend that Plaintiffs are time-barred from applying for fees, and also that they are not "prevailing" under the statute.

disabled child who is the prevailing party.

Plaintiffs filed the instant complaint for attorney's fees in this Court on January 20, 2004, eighty-five days after the administrative appeals decision was issued on October 27, 2003.  The IDEA contains no statutes of limitations for either substantive appeals or claims for attorney's fees.  See Zipperer et al v. School Board of Seminole County, Fla ., et al., 111 F.3d 847, 850 (11th Cir. 1997); Powers v. Indiana Dept. of Educ., 61 F.3d 552, 555 (7th Cir. 1995); King et al. v. Floyd County Bd. of Educ., 228 F.3d 622, 624 (6th Cir. 2000).  Where Congress fails to provide a statute of limitations, federal courts generally borrow a limitations period from an analogous state cause of action.  Wilson v. Garcia, 471 U.S. 261 (1985).  What appears to be a simple task is made difficult because courts are split every which way regarding what state action is most analogous to a claim for attorney fees under the IDEA, resulting in ranges for applicable statutes of limitations from 30 days to six years.

A.  Decisions by Other Courts

How a court comes out on the issue depends on how it characterizes the nature of a fee application brought under the IDEA-- i.e., whether the claim for fees is "part and parcel" of the administrative proceeding, or whether it is an independent cause of action.  Courts which allow longer limitations periods generally fall in the camp which considers the fee claim an independent cause of action.  See, e.g., Zipperer, et al., v. School Bd. of Seminole County, Fl., et al., 111 F.3d 847, 851-52 (11th Cir. 1997) (four-year Florida statute of limitations governing claims based on statutory liability was applicable to action for attorney's fees under IDEA).  In contrast, courts which close the window for fee requests up to as little as 30 days do so on the basis that the fee claim is ancillary to the underlying education dispute.  See, e.g., Powers v. Indiana Dep't of Educ,

4

Division of Special Educ., 61 F.3d 552, 556-57 (7th Cir. 1995) (application of state's 30-day limitations period for judicial review of final agency decisions was acceptable); King v. Floyd County Bd. of Educ., 228 F.3d 622, 625 (6th Cir. 2000) (noting that § 1414(i) "seems to treat the award of attorney fees as another phase of the administrative proceedings" and holding that claim for attorney fees incurred in administrative proceedings under IDEA was subject to state's 30-day limitations period for appeals of administrative orders.)

Defendants urge the Court to find that Plaintiffs' fee request is ancillary to the judicial review of an administrative decision -- as the Sixth and Seventh Circuits have done in King and Powers, respectively. They argue that the most closely analogous statute is NMRA, Rule 1-074(E), which governs appeals from administrative agencies to the district courts when there is a statutory right of review to the district court.

There is no law in the Tenth Circuit setting forth the appropriate limitations period for an application for attorney's fees under the IDEA. As mentioned above, the Sixth and Seventh Circuits have taken the stance that a short administrative appeals limitation period is appropriate for such claims. The court's decision in Powers was necessarily constrained by prior decisions in that circuit, one of them being Dell v. Board of Educ., Tp. High School Dist.,113 32 F.3d 1053 (7th Cir. 1994). Dell opted for the 120-day limitation period governing judicial review of an administrative decision from the Illinois School Code as the prudent course to take, mindful of the parents' interest -- and the attorney's -- "in the expeditious resolution" of the matter of attorney's fees. 32 F.3d at 1063. Plaintiff's description of the tenor of the Powers decision is accurate. The court in Powers obviously had some misgivings about rejecting the "inherent logic" in applying a substantive statute of limitations, rather than one reserved for judicial review of agency decisions.

5

Dell's holding rose from the Seventh Circuit's finding that the IDEA "basically provides for review of an administrative process." Id., at 1060-61.

In King v. Floyd County Bd. of Educ., where only two judges joined in the opinion, Judge Engel's well-reasoned dissent highlighted many of the pitfalls inherent in a short limitations period for IDEA attorney fee claims. Judge Engel gave detailed examples of why a 30-day limitations period had the effect of "chilling rights emphatically created by Congress" and why the haste it created was wasteful for plaintiffs. King, 228 F.3d at 628. The dissent also referenced Zipperer, 111 F.3d 847, which adopted a four-year limitations period for attorney's fee claims and set out the rationale preferred by Judge Engel. From the Court's own research, Zipperer appears to be the only other circuit decision which has weighed in on the issue. In that decision, the Eleventh Circuit noted that the policy behind the IDEA called for "prompt resolution of disputes," but at the same time recognized that a "claims for attorneys' fees is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations." 111 F.3d at 851-52.

In its analysis, Zipperer noted that in Dell and Powers, the Seventh Circuit held that short limitations periods applied in suits based on attorney's fees. However, the Sixth Circuit also insightfully noted that the Powers court "acknowledged concerns for the brevity of a thirty-day statute of limitations in IDEA cases." Zipperer, 111 F.3d at 851.[3] Zipperer went on to list numerous district court cases in other jurisdictions which rejected the Seventh Circuit's reasoning.

---

[3] The Sixth Circuit's decision in King followed Zipperer by three years.

Id.  The Court's own research has unearthed others as well.[4]

B.      Whether Plaintiff's Application for Fees is Time-Barred

It is now this Court's turn to determine what state statute of limitations is most analogous to Plaintiff' claim for attorney fees brought under the IDEA.  The United States Supreme Court established a three-part test for such inquiries in Wilson v. Garcia, 471 U.S. 261, 268 (1985). Under this test, I must first consider whether state law or federal law governs the characterization of a § 1983 claim for statute of limitations purposes. If federal law applies, I next decide whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case.  Finally, I must characterize the essence of the instant claim and decide which state statute provides the most appropriate limiting principle.  Id., cited in J.B. v. Essex-Caledonia

---

[4] See, Ostby v. Oxnard Union High, 209 F.Supp.2d 1035 (C.D.Cal. 2002) (three-year statute of limitations applicable to actions for liability created by statute); J.B. v. Essex-Caledonia Supervisory Union et al., 943 F.Supp. 387 (D.Vermont 1996) (Vermont's six year "catch-all" statute of limitations); Robert D. v. Sobel, 688 F Supp. 861 (S.D.N.Y.1988) (three-year limitations period, rejecting Second Circuit's application of four-month statute of limitations for appeals of administrative decisions); James v. Nashua Sch. Dist., 720 F.Supp. 1053 (D.N.H. 1989) (applying three-year statute of limitations to attorney's fees claims brought under IDEA, finding that shorter limitations period would "negate Congressional intent"); Dickerson ex rel. Ingram v. Brodgen, 80 F.Supp. 2d 1319 (S.D.Ala 1999) (applying Alabama's two-year general statute of limitations for personal injury actions); Murphy v. Girard School Dist, 134 F.Supp.2d 431, 436 (W.D.Pa. 1999) (concluding that limitations period for applications for attorney's fees under IDEA is "at least two years"); Mayo v. Booker, 56 F.Supp.2d 597 (D.Md. 1999) (adopting 180-day limitations period for attorney fee claims in IDEA cases); Curtis K. v. Sioux City Community Sch. Dist., 895 F.Supp. 1197 (N.D.Iowa 1995) (finding 30-day limitations period insufficient, and that either two-year or five-year statute of limitations under Iowa law applies to attorney fee claims brought under the IDEA); Holmes v. Dep't of Education, 234 F.Supp. 2d 1156 (rejecting 30-day statute of limitations applicable to judicial review of administrative decisions, and holding that state's two-year limitations period applies to claim for attorney's fees brought under IDEA); but see, Wagner v. Logansport Community School Corp., 990 F.Supp. 1099 (N.D. Ind.1999) (claims for attorney's fees brought under IDEA subject to 30-day statute of limitations applicable to state law administrative appeals of educational decisions).

Supervisory Union et al., 943 F.Supp. 387, 389 (D.Vermont 1996).

1.     *Wilson* inquiry

It is clear that federal law governs the characterization of Plaintiff's claim, which is brought under a specific provision in a federal statute.  See, 20 U.S.C. § 1415(i)(3)(A) (exclusive jurisdiction vested in federal courts); Curtis K., 895 F.Supp. at 1218 (noting that federal law dictates who is "prevailing party").  The second part of the inquiry necessarily entails a characterization of the instant claim, i.e., whether it is collateral to a judicial review of an administrative decision, or an independent action.  Based on my review of the case law from other courts (particularly the Eleventh Circuit's analysis in Zipperer and Judge Engel's dissent in King), I conclude that a complaint for attorney's fees brought under the IDEA is an independent claim, for several reasons.  First, IDEA provides for judicial review and an application for fees in separate provisions, which serve separate purposes.  See, Zipperer, 111 F.3d at 851 (noting that provisions are "distinguishable"; Curtis K. v. Sioux City Community Sch. Dist., 895 F.Supp. 1197, 1209-10 (N.D.Iowa 1995) ("The IDEA itself makes it clear that under its provisions an action for attorneys fees and an action for judicial review of the administrative decision are entirely separate"); J.B. v. Essex-Caledonia, 943 F.Supp. at 390 (action for judicial review of agency decision and action for attorney fees are "entirely separate," and citing cases finding no similarity between an action for attorney's fees and an action to appeal a final administrative determination); Panico v. Board of Educ., Evergreen Park Community School Dist. 231, 1992 WL 211051 (N.D.Ill.,1992); Robert D. v. Sobel, 688 F.Supp. 861, 864 (S.D.N.Y.1988) ("There is no similarity or analogy between an action for attorney's fees and costs, and an action to appeal a final administrative determination").

Plaintiffs correctly suggest that Mathern v. Campbell County Children's Center, 674 F.Supp. 816 (D.Wyo. 1987) reinforces the stand taken by many district courts in characterizing an application for attorney's fees under the IDEA as an independent action rather than an appeal from an administrative decision.  While the case does not answer directly the question of whether Plaintiffs' motion is time-barred, it is somewhat helpful in providing support for why an administrative deadline should not be applied to Plaintiffs' motion for fees.[5]

Further, the IDEA's provision for judicial review not only envisions different purposes from a claim for fees under § 1415(i)(3)(B), but "the grounds upon which relief may be granted and the nature of the proceedings, or scope of review, differ."  943 F.Supp. at 390;[6] Curtis K., 895 F.Supp. at 1209 (judicial review of administrative proceedings under the IDEA is intended to be a revisiting of the merits of the underlying litigation, in contrast to attorney fee claims).

Finally, the reasoning applied by those courts which have found that an attorney's fee claim under the IDEA is an independent claim, appears to be more sound.  Since a district court alone, and not an agency, has the jurisdiction to award fees, I do not believe a claim for attorney fees can be classified as a review of agency decision.   See, Zipperer, 111 F.3d at 851; Curtis K., 895 F.Supp. at 1215 ("No aspect of a [§ 1415(i)(3)(B)] is appellate in nature; rather, it can only be classified as a personal action seeking money damages") and at 1211-12 ("An action for

---

[5]  In addition to holding that an independent action in trial court was the proper method for seeking attorney fees, Mathern also held that a court could award attorney fees to a party which prevailed in an administrative proceeding in an action which was never tried on its merits in federal court.  674 F.Supp. at 817.

[6]  For example, as the court in J.B. v. Essex-Caledonia points out, an appeal from an administrative ruling requires a *de novo* review, whereas an inquiry into fees involves an "entirely different set of factual and legal questions."  943 F.Supp. at 390.

attorney fees under the IDEA is not brought as a judicial review action over which either state or federal courts have jurisdiction pursuant to [§ 1415(i)(2)], but as an independent action over which the federal courts have exclusive jurisdiction pursuant to [§ 1415(i)(3)(A) and (B)])."

2.      *Application of Case Law to Instant Motion*

The conclusion that an application for attorney's fees brought under the IDEA is an independent claim, and not a review of an agency decision, is in line not only with the policies behind the IDEA, but also with common sense considerations as well.  See, Barajas v. Bermudez, 43 F.3d 1251, 1255 (9th Cir.1994) ("In no circumstance, however, should a court adopt a limitation period that would frustrate the policies of the federal statute").

Having determined that Plaintiffs have asserted a claim which is independent of the provision in the IDEA governing judicial review of agency decisions, I also conclude that the shorter 30-day limitations period would not be appropriate.  A very short statute of limitations would be, as other courts have found, "inconsistent, if not totally contrary, to the federal policy of vindicating the rights of disabled children under the IDEA. . . ."  Curtis K., 895 F.Supp. at 1219. On the other hand, a longer limitations period would put urgency where it belongs – with a resolution of the underlying educational dispute.  See, e.g., Zipperer, 111 F.3d at 851 ("resolution of claims for attorney's fees is less urgent"); Panico v. Board of Educ., Evergreen Park Community School Dist. 231, 1992 WL 211051, at *3 (N.D.Ill.,1992) ("The understandable sense of urgency in getting children the educational services they need does not apply to actions for attorneys' fees for obvious reasons"); Michael M. v. Board of Educ. of N.Y.C. School Dist., 686 F.Supp. 995, 1002 (E.D.N.Y.1988) ("In an action for attorneys' fees speed is not of the essence").  As noted in the very thorough analysis on the issue from the Northern District of

Iowa, a shorter limitations period "would have the unwholesome effect of undermining settlement negotiations and encouraging a wave of hastily filed suits for attorney fees." Curtis K., 895 F.Supp. at 1220-21.

3.      *Analogous State Statute?*

The remaining question on this issue is to decide what state statute is most analogous to the instant claim for attorney's fees.  Because I have already decided that it is not ancillary to a judicial review of the decision on educational placement, see discussion above, I reject the notion of a thirty-day limitations period for attorney fee claims brought under the IDEA.  Defendants offer two other bases for adopting a thirty-day limitations period, neither of which have merit, although they appear superficially attractive.

Under this Court's local rules, an application for an award of attorney's fees, not brought pursuant to the Equal Access to Justice Act, "must be filed and served within thirty (30) calendar days after entry of judgment."  D.N.M.LR-Civ. 54.5(a).  The rule does not apply in this instance, where Plaintiffs did not present to this court any claim from the underlying dispute, from which to make an application for fees.  Also, the local rules may be waived "to avoid injustice."  D.N.M. LR-Civ. 1.7.  Based on my discussion above, policy considerations behind the IDEA provide such circumstances.  I am also mindful that 42 U.S.C. § 1988(b) provides that in federal civil rights actions "the court, in it discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee *as part of the costs*."  §42 U.S.C. 1988(b).  Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997) (emphasis added).  My reading of the case law dictates a finding that a plaintiff's claim for attorney's fees under the IDEA does not fit into the category of "costs" as envisioned under the Civil Rights statute.  Also, as with a claim for fees under the local rule, it

11

is assumed that there was litigation pending before the district court prior to the application for fees.  In an application for fees under the IDEA, although a federal court may perform the judicial review, fees are recoverable for the administrative proceedings, which did *not* take place in the district court.

Plaintiffs suggest both a four-year statute of limitations under New Mexico's "catch-all" statute, for "all other actions" not otherwise provided for.  N.M.S.A. 1978, § 37-1-4.  They also offer a six-year limitations period,  N.M.S.A. 1978, §37-1-3, which is the statute of limitations for certain contracts and "judgments of any court not of record."

While I have solidly rejected Defendants' thirty-day option, I find that Plaintiffs' complaint, which was filed 85 days after the administrative decision was issued, would be timely under both the four- and six-year alternative limitations periods Plaintiffs offer.[7]  However, because an application for fees under the IDEA springs into being by virtue of a statutory

---

[7] My findings herein do not address the separate question of the applicable statute of limitations for the appeal of substantive IDEA claims, since that question need not be resolved for purposes of the instant motion.  Courts have varied on this issue as well.  Cmp., e.g., Powers, 61 F.3d at 558 (noting decisions from district courts addressing appeals of substantive decisions under IDEA which have determined that the 30-day limitation period violates policies behind IDEA); Zipperer, 111 F.3d at 851 (noting decisions allowing range of 30 to 120 days for substantive appeals); Manning ex rel. Manning v. Fairfax County School Bd., 176 F.3d 235 (4th Cir. 1999) (applying Virginia's one-year statute of limitations period governing personal actions generally, rather than five-year limitations period for written contracts, for request for administrative due process hearing under IDEA); Dell v. Board of Educ., 113, 32 F.3d 1053, 1064 (7th Cir. 1994) (finding that the "most prudent course" is to utilize 120-day limitation period found in state school code as the governing statute of limitations as best promoting purposes of IDEA); Panico v. Board of Educ., Evergreen Park Community School Dist., 231 1992 WL 211051 (N.D.Ill.,1992) (noting that "[f]ederal courts differ over which state statute of limitations is most clearly analogous to claims under the IDEA for administrative review of educational placement and services decisions") citing Adler v. Education Dept. of New York, 760 F.2d 454 (2d Cir.1985) (administrative appeal limitation applies to appeal of administrative decision).

provision, I find that New Mexico's four-year "catch-all" limitations period is more applicable than one founded on contract. State limitations periods for personal injury actions have been used as well, but I agree more with the Courts which have viewed IDEA fee applications as economic in nature. See, e.g., J.B. v. Essex-Caledonia Supervisory Union et al., 943 F.Supp. 387 at 391 (applying Vermont six-year "catch-all" statute of limitations, rather than state's personal injury statute, noting that personal injury statute has been applied by other courts, nevertheless declining to do so, finding a "fee claim action to be more like a claim for economic loss resulting from deprivation of one's legal rights than an injury to the person") (citing other courts that have held likewise); Curtis K., 895 F.Supp. at 1215 (attorney fee claims under § 1415(i)(3)(B)] "can only be classified as a personal action seeking money damages").

Having determined that Plaintiff's complaint is timely brought in this Court under a four-year statute of limitations, I now turn to the application for fees on its merits.

**II.     Whether Application for Attorney Fees Should be Dismissed**

The IDEA provides that a court in its discretion may award attorneys' fees as part of costs to the parents of a child who is a "prevailing party." 20 U.S.C. § 1415(i)(3)(B).  Defendants argue that Plaintiffs are not entitled to fees because they obtained none of the relief originally requested, although they did receive some limited or conditional relief.  Thus, the first question to resolve is whether Plaintiffs can be considered a prevailing party.

In order to be a prevailing party, the party must succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit, and the relief effected a material alteration in his legal relationship with the defendant, and the alteration is not merely technical or *de minimis* in nature.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983);

13

Fowler v. Unified School Dist. No. 259, Sedgwick County, Kan. 128 F.3d 1431 (10th Cir. 1997); Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-93 (1989); Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). The term "prevailing party" means the same under § 1415(e)(4)(B) as it does under 42 U.S.C. § 1988). Fowler, 128 F.3d at 1439 (citing Urban by Urban v. Jefferson, 89 F.3d 720, 728-29 (10th Cir. 1996)).

A.     Underlying Issues[8]

Plaintiffs' original IDEA complaint requested:

- implementation of Mark's Behavioral Intervention Plan;[9]
- reduction of Mark's school assignments to 80%;
- occupational therapy evaluation;
- transition services prior to graduation (job seeking and placement).

The above claims were included in Plaintiffs' letter to the New Mexico Department of Special Education, dated November 18, 2002, which triggered Plaintiffs' request for a due process hearing. Ex. A. Based on the Administrative Appeals Officer's ("AAO") discussion of the underlying issues, it seems that between the time of the original complaint and the April 29, 2003 due process hearing, Plaintiffs raised two other issues which were also addressed at that hearing:

- a retaliation claim under § 504 of the Rehabilitation Act in that the district took actions against the student in retaliation for the parents' request for a due process hearing; and

---

[8] The following facts are from the Decision of the Administrative Appeals Officer, which forms the basis for both parties' positions on the instant motion. Ex. B.

[9] "Mark" is used to distinguish Mark Solis from his parents, who brought the action on his behalf.

14

        **"**      a discrimination claim under § 504 of the Rehabilitation Act in that the school's generic disciplinary program violated the Act's requirement of a least restrictive environment.

*Failure to Implement Behavior Intervention Plan ("BIP").* While some of the above charges are self-explanatory, Plaintiffs' charge concerning the school district's failure to implement the BIP is based on other underlying facts which call for more explanation. Mark had a long history of behavioral problems which necessitated the development of an individualized BIP.[10] Mark had BIP's in place for three years at the district, until May 2001. After May, 2001, the district determined that Mark did not require a BIP because his behaviors "had improved" and because in the fall of 2001, the district instituted the Attendance, Intervention, and Monitoring ("AIM") Program, which appeared to adequately meet Mark's disciplinary needs. The AIM Program addressed issues of discipline, conduct and misbehaviors for special education students only, and applied to all special education students, regardless of the type or nature of disability. Mark's parents did not challenge Mark's BIP, and they evidently believed that it was still in effect as late as November 2002.

It was not clear whether the AIM Program as it related to Mark was discussed at later IEP meetings, since the AIM matrix was not formally incorporated into the IEP's of district students. See, Ex. B, at 10 & 14. On November 8, 2002, Mark was disciplined for the use of profane language. When Mark refused to accept a three-day in-school suspension (following the AIM matrix of discipline), he was informed that he would be suspended from school for three days.

---

[10] Part of the plan involved isolating which behaviors were attributable to his disability. For example, a determination was made in October 2000 that Plaintiff's "off-task behavior and not completing work" was a manifestation of his disability, "while inappropriate language and noncompliance" was not. Ex. B, ¶ 28.

15

Plaintiffs' charge regarding the failure to implement Mark's BIP is based on the district's use of the generic AIM Program disciplinary measures instead of the BIP which they believed was still in place.[11]

*Discrimination under § 504*.  Plaintiffs alleged that the AIM Program discriminated against special education students because it applied different and graduated consequences for special education students which did not apply to regular education students, that it singled out the special education student for disciplinary purposes and deprived the special education student of interaction with nondisabled peers.  For example, special education students reported to a central "tardy hall" if they were late (along with regular education students), but were then taken by a special education assistant to the AIM classroom, which is a segregated, self-contained special education classroom.

*Retaliation under § 504*.  The retaliation claim arose from an incident on December 8, 2002, involving Mark on the school bus where he refused to allow other students to disembark, blocking their exit from the bus.  The incident was reported to the city police who filed misdemeanor false imprisonment and disorderly conduct charges against Mark.  Mark was arrested on school grounds two days after the incident.  Plaintiffs claimed that these actions were in retaliation for Plaintiffs' filing a complaint with the school district.

B.     <u>Administrative Findings</u>

Defendants failed on their contention that the entire appeal was moot due to Mark's graduation prior to the filing of the appeal.  On appeal, Plaintiffs raised only one issue -- the

---

[11] Mark's BIP required a "meeting or manifestation determination" prior to taking disciplinary action, which may not have been required as part of the AIM matrix.  <u>See</u> Ex. A.

district's failure to develop and implement Mark's BIP. It appears undisputed that Plaintiffs prevailed on that issue alone. The AAO found that the district's decision to substitute the AIM Program to handle Mark's disciplinary problems was "contrary to the requirements of IDEA" and further, that if Mark did not require a BIP after May 2001 because his behaviors had improved, that fact "should have been made an express part" of Mark's BIP. Ex. B, ¶¶ 21 & 22.[12]

The issues related to reduction of assignments, occupational therapy evaluations and transition services appear either to have been denied and not appealed by Plaintiffs, or were rendered moot as discrete issues by Mark's graduation. The § 504 retaliation claim was dismissed for failure to present a *prima facie* case. The AAO found that the parents' filing of the complaint with the school district was a protected activity, and that Mark's arrest constituted an adverse action. However, the AAO affirmed the administrative agency's finding that there was no causal relation between the complaint Mark's parents filed with the New Mexico Department of Special Education on November 18, 2002 and the subsequent December 2002 bus incident and police charges. Ex. B at 26-27. As to the § 504 discrimination claim, the AAO found that the AIM Program did stigmatize special education students, and that the "generic program addressed only to students with disabilities may not be substituted for the IDEA provisions dealing with discipline." Ex. B at 24. However, Plaintiffs were denied relief on the discrimination claim because there was "no remedy in a due process hearing or upon administrative appeal under IDEA or state regulations for § 504 discrimination," particularly since Mark had graduated. Ex.

---

[12] It was noted that by December 12, 2002, prior to the hearing, the district was back in the process of developing a BIP "to deal with Student's profanity, disrespect for authority, attendance, off-task behaviors, defiant disruptive classroom behavior and nonparticipation in academics . . . ." Ex. B, Decision, ¶ 36.

17

B. at 25.

With regard to the district's failure to develop a BIP for Mark during the 2002 fall semester in order to afford him the least restrictive environment, the AAO awarded Plaintiffs "compensatory education" in an accredited vocational or other post-secondary educational program, paid for at the district's expense.[13]  In the alternative, Mark received an award of independent psychological and educational evaluations (again, paid for by the school district) – available only if Mark decided not to avail himself of the six months compensatory education award.

The AAO's Decision ended with this statement: "Parent has prevailed in part and District has prevailed in part." Ex. B at 28.  Thus, the sole question becomes whether the AAO's decision on the BIP issue resulting in the award of compensatory education and/or independent psychological and educational evaluations is a sufficient basis upon which to award attorney's fees to Plaintiffs as a prevailing party.

C.      Prevailing Party?

As explained previously, a plaintiff need not prevail on all claims in order to be a prevailing party.  Rather, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.  Fowler, 128 F.3d 1431 (citing Farrar v. Hobby, 506 U.S. at 111-12).  In this case, Plaintiffs are receiving relief which addresses only one of several issues that were initially raised.  While the AAO's award is limited and conditional,  it nevertheless provided

---

[13]  Since Mark had already graduated, the AAO determined that an award of continued educational services provided by the school district was no longer appropriate.

relief to one of the issues Plaintiffs raised.  See, e.g., Murphy v. Girard School Dist., 134 F.Supp.2d 431 (W.D.Pa.,1999) (as long as IDEA plaintiff achieves some of the benefit sought in the suit, even though he does not ultimately succeed in securing a favorable judgment, he can be considered a prevailing party for purposes of a fee award); Fowler, 128 F.3d 1431 (plaintiffs who were awarded only partial reimbursement of interpreter services were considered prevailing party).  Regardless of which alternative award Plaintiffs choose, Defendants will be compelled to outlay some expense, enough to say that the relationship between the school district and Plaintiffs is considerably altered.

It is also worth noting that Mark's graduation mid-stream made it almost impossible for an award to exactly match Plaintiffs' initial issues, which were raised and argued while Mark was still a student in the district.  This fact sets apart the instant case from others which have found partial success to be insufficient for purposes of a fee award.  See, e.g., Urban , 89 F.3d 720 (plaintiff did not succeed to the degree necessary to warrant an award of attorney's fees where he prevailed on two out of three claims, but did not prevail on the issue of placement at neighborhood school); and Kathleen H. et al v. Massachusetts Dep't of Educ., et al., 154 F.3d 8 (1st Cir. 1998) (partial success insufficient for purposes of awarding attorney's fees in context of parents' "broader goals. . . .").  For the above reasons, I do not find Plaintiffs' success to be merely technical or *de minimis*, and thus find that Defendants' motion should be denied.  While I am denying Defendants' Motion to Dismiss, I recognize that the District was the prevailing party on many of the issues addressed in the substantive IDEA claim and subsequently on appeal.

D.     Adjustment of the Lodestar

Deciding that Plaintiffs are "prevailing" is only the initial part of the inquiry. To make the

initial determination of what amount is a reasonable fee, a court should take the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. Hensley, 461 U. S. at 433.  The product of this multiplication is called the lodestar.  The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services." Id.  However, if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436); Phelps v. Hamilton, 120 F.3d 1126, 1130 (10th Cir.1997).  In that case, the court must determine whether an adjustment to the lodestar is necessary. Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir. 1983).

This is clearly such a case.  Although Plaintiffs have prevailed for purposes of an award of attorney fees, their percentage of success on the remainder of their claims would justify a downward adjustment of the lodestar.  The amount of the lodestar and the degree of adjustment, however, are not before me in this motion.  I expect that the Court will have the opportunity to address those issues at such time when parties have fully briefed the application for fees within the applicable limitations period, which I have determined to be four years.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss **(Doc. 4)** is hereby DENIED for reasons set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE